UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

THOMAS CRANMER,            )
                           )
       *Plaintiff*       )
                           )
v.                         )   Docket No. 07-99-P-S
                           )
MICHAEL J. ASTRUE,         )
**Commissioner of Social Security,**  )
                           )
       *Defendant*       )

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from left subtalar and ankle arthrosis, right-knee degenerative joint disease and personality disorder, is capable of returning to past relevant work as a night auditor. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff's left ankle/right knee degenerative joint disease were severe impairments, while his angina and personality disorder were non-severe

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on
*(continued on next page)*

impairments, Finding 3, Record at 24;[2] that he retained the residual functional capacity ("RFC") to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk for two hours and sit for six hours in an eight-hour day, occasionally use foot controls, occasionally climb stairs, balance, stoop, kneel, crouch and crawl and have occasional contact with co-workers and the public, but could never climb ladders, ropes or scaffolds and had to avoid uneven surfaces and moving machinery, Finding 7, *id.*; that his past relevant work as a night auditor did not require the performance of work-related activities precluded by his RFC, Finding 8, *id.*; and that he therefore was not under a disability at any time through the date of decision, Finding 11, *id.*[3] The Appeals Council declined to review the decision, *id.* at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of

---

February 29, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

[2] The administrative law judge also found the plaintiff's drug and alcohol abuse a severe impairment but not a contributing factor material to the determination of disability. *See* Record at 21; Findings 3, 10, *id.* at 24.

2

past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's arguments also implicate Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff asserts that the administrative law judge erred in (i) failing to find a severe impairment of personality disorder, (ii) neglecting to use the required technique for evaluating mental impairments, (iii) failing to properly evaluating a treating-source opinion (that of Gregory Pomeroy, M.D.), (iv) finding the plaintiff capable of returning to a job (night auditor) that cannot be performed with the stated limitations, and (v) demonstrating a level of bias sufficient to form an independent basis for remand. *See generally* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6). I agree that, on the basis of the first three points, reversal and remand are warranted.

---

[3] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through December 31, 2007, *see* Finding 1, Record at 24, well prior to the decision date of November 1, 2005, *see id.* at 25.

## I.  Discussion

### A.  Points 1 & 2: Flaws in Handling Mental Impairment

As a threshold matter, the plaintiff contends that the administrative law judge committed error both in his substantive conclusion that the plaintiff's personality-disorder impairment was non-severe and the process by which that conclusion was reached.  *See id.* at 2-5.  I agree.

A "special technique" must be used in assessment of mental impairments, requiring, *inter alia*, assessment of the severity of the impairment on the basis of rating of the degree of limitation in four broad functional areas and, if the impairment is found to be severe and neither meets nor equals a so-called "listing," assessment of the claimant's mental RFC.  *See, e.g.*, 20 C.F.R. §§ 404.1520a(a)-(d), 416.920a(a)-(d).  The written decision of an administrative law judge "must incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the [four broad] functional areas described in paragraph (c) of this section [activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation]."  *Id.* §§ 404.1520a(c)(3) & (e)(2), 416.920a(c)(3) & (e)(2); *see also, e.g., Behn v. Barnhart*, 463 F. Supp.2d 1043, 1047 (C.D. Cal. 2006) ("Although Social Security regulations no longer require that the ALJ complete a Psychiatric Review Technique Form and append it to the written decision, when there is a colorable claim of a mental impairment, the ALJ must rate as being either none, mild, moderate, marked, or extreme the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace and also rate as either none, one or two, three or four or more the claimant's episodes of decompensation, and such ratings **must** be included in the ALJ's written decision.") (citations and footnote omitted) (emphasis in original).  In this case, the administrative law judge included no such ratings in his written decision – either directly

4

or by way of adoption or incorporation of the PRTF findings of any expert consultant. *See* Record at 18-23. This was clear error.

Possibly in part as a result of this analytical shortcoming, the administrative law judge arrived at a Step 2 finding that cannot be discerned to be supported by substantial evidence. While deeming the plaintiff's personality disorder non-severe, he assessed him as having a limitation that the Record makes clear can only fairly be characterized as severe – that is, having "more than a minimal effect on an individual's ability to work[.]" *McDonald*, 795 F.2d at 1124 (citation and internal quotation marks omitted). At hearing, a vocational expert testified that the limitation in question – restriction to occasional interaction with the public and co-workers – precluded performance of two of the plaintiff's past jobs. *See* Record at 611. Inasmuch as the administrative law judge *de facto* found the plaintiff's mental impairment severe, he should have properly assessed the plaintiff's mental RFC in accordance with the prescribed special technique – a process that typically requires the assistance of an expert consultant. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"). There is no expert mental RFC assessment of record.

While there are three expert PRTF reports of record, none of which found a severe mental impairment – at least absent consideration of effects of drug and alcohol abuse, *see* Record at 213-24 (Arthur H. Hamlin, Psy.D., PRTF dated November 13, 2002), 257-70 (David R. Houston, Ph.D., PRTF dated March 1, 2004), 376-89 (Thomas A. Knox, Ph.D., PRTF dated June 29, 2004) – that does not help the commissioner in the circumstances of this case. The administrative law judge did not so much as mention any of those expert PRTF assessments, let alone purport to rely on them. *See id.* at

18-23. In any event, none of the three experts had the benefit of review of material evidence postdating their assessments – a report from the plaintiff's treating counselor, David A. Bigelow, MA, LADC, detailing ongoing anger-management issues that had led staff at a soup kitchen at which the plaintiff volunteered to "restructure[] his job to attempt to eliminate [him] from needing to interact with the public, and to a lesser extent his coworkers[.]" *Id*. at 548. The expert PRTF assessments of record accordingly do not stand as substantial evidence of the administrative law judge's Step 2 non-severity finding. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).[4]

Reversal and remand accordingly are warranted.

### B. Point 3: Treatment of Treating Source

The plaintiff next complains that the administrative law judge erred in essentially ignoring the RFC opinion of a treating source, Dr. Pomeroy. *See* Statement of Errors at 6. He is again correct.[5]

While an administrative law judge is free to decline to adopt an RFC opinion of a treating source, he or she must supply "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or

---

[4] As the plaintiff points out, although Bigelow is not an "acceptable medical source" as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a), he qualifies as an "other [medical] source" for purposes of 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1). *See* Statement of Errors at 3. While reports of "other medical sources" cannot be used for certain purposes, such as establishing the existence of a medically determinable impairment, they are relevant to assessment of the severity of an established impairment and the functional restrictions, if any, that it imposes. *See, e.g., id*. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.").

[5] At oral argument, counsel for the commissioner did not contest that Dr. Pomeroy qualifies as a "treating source" for purposes of 20
*(continued on next page)*

decision for the weight [he] give[s] your treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted").

At hearing, the plaintiff submitted an RFC opinion dated July 21, 2005 in which Dr. Pomeroy detailed a number of specific limitations attributed to the plaintiff's foot/ankle arthritis and indicated that, as a result of arthritis, the plaintiff was not able to complete an eight-hour day, forty-hour workweek on a sustained, ongoing basis without undue interruptions or absences. *See* Record at 496-99. The administrative law judge made no comment about any aspect of the Pomeroy RFC opinion. *See id*. at 18-23. It is not the task of the court (or, for that matter, counsel for the commissioner) to articulate for the first time at the appeals stage "good reasons" for rejecting a treating source's RFC opinion. Reversal and remand accordingly are merited on this basis, as well. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted); *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *see also, e.g., Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in the

---

C.F.R. §§ 404.1527(d) and 416.927(d).

7

notice of determination or decision for the weight assigned to a treating physician's opinion. Further, the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In this case, the ALJ offered no explanation for the weight, if any, he gave to the opinion of Dr. Rowland, the treating physician. We must remand because we cannot properly review the ALJ's decision without these necessary findings.") (citations and internal punctuation omitted); *Hageman v. Astrue*, No. 07-1002-WEB, 2007 WL 4239466, at *8 (D. Kan. Oct. 10, 2007) ("[E]ven on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. It is clear legal error to ignore a medical opinion. The ALJ clearly erred by only considering 1 of the 2 RFC forms filled out by each of the two treating physicians. As noted above, the court will not engage in the task of weighing evidence in the first instance. Therefore, the case shall be remanded in order for the ALJ to consider both of the RFC opinions provided by the two treating physicians.") (citations omitted).

### C. Points 4-5: Past Relevant Work; Bias

Should the court concur that remand is warranted on one or more of the foregoing bases, I briefly discuss, for the benefit of the parties on remand, the plaintiff's remaining two points of error, neither of which I find persuasive.

    1.    <u>Night-Auditor Job</u>. The plaintiff argues that the administrative law judge erred in deeming him capable of performing the night-auditor job, given the stated restriction to only occasional contact with the public, inasmuch as the job entails significant public contact. *See* Statement of Errors at 6. This is so, he posits, inasmuch as (i) he testified that the job, as he performed it, required hotel front-desk work, and (ii) the Dictionary of Occupational Titles ("DOT") description

8

indicates that the job may require front-desk-clerk duties, which themselves entail significant contact with the public. *See id*. at 6-7; s*ee also, e.g.*, Record at 615 (plaintiff's testimony), 573-78 (copies of Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") §§ 210.382-054 (night auditor), 238.367-038 (hotel clerk))

To be deemed capable of returning to past relevant work, a claimant must retain the RFC to perform either "the actual functional demands and job duties of a particular past relevant job" or, "when the demands of the particular job which claimant performed in the past cannot be met, . . . the functional demands of that occupation as customarily required in the national economy[.]" *Santiago v. Secretary of Health & Human Servs*., 944 F.2d 1, 5 & n.1 (1st Cir. 1991) (citations and internal quotation marks omitted); *see also, e.g*., SSR 82-62, at 811.

The night-auditor job, as customarily performed, does not entail significant contact with the public. A night auditor "[v]erifies and balances entries and records of financial transactions reported by various hotel departments during [the] day, using adding, bookkeeping, and calculating machines." DOT § 210.382-054, reprinted at Record at 573. While, in smaller establishments, a night auditor may also perform the duties of a hotel clerk, the DOT indicates that dealing with people is not a significant aspect of the job. *Id*., reprinted at Record at 573-74.

2.      Bias. The plaintiff finally contends that the decision is so permeated by bias, as evidenced by the administrative law judge's demeaning comments at hearing and his apparent reverse-engineering of the plaintiff's RFC to ensure a finding of non-disability, that remand is required on that basis alone. *See* Statement of Errors at 7-8.

A plaintiff bears the burden of overcoming the presumption that his or her case was decided by an honest and impartial adjudicator. *See, e.g., Brasslett v. Cota*, 761 F.2d 827, 837 (1st Cir. 1985) ("[A] plaintiff alleging impartiality must overcome the presumption that administrators are men

9

of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances, and must demonstrate an actual risk of bias or prejudgment.") (citation and internal quotation marks omitted). Such a showing is not easily made; "the presumption [of impartiality] can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner of Soc. Sec.*, 108 Fed. Appx. 358, 364 (6th Cir. 2004) (citations and internal quotation marks omitted). "Stated differently, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.* (citation and internal quotation marks omitted).

The plaintiff does not surmount this hurdle. While the comments about which he complains display a brusque style – which is unfortunate – taken in context they convey not bias but rather reasonable skepticism that the plaintiff, who had managed to keep up regular work in the past, had recently quit a volunteer soup-kitchen job because of claimed inability to deal on a sustained basis with other people. *See generally* Record at 588-91; *see also id.* at 591 ("You've gone from working most of your life to getting some physical problems which caused you to not be able to do some of the strenuous work that you had been doing in the past. I understand not being able to walk, and your knees and your legs, obviously you've got a problem there. But now you're not doing, you're not doing anything, except taking stuff from people. Why not, why, just because everyone irritates you so bad you can't even volunteer two hours a day?").

The plaintiff's suggestion that the administrative law judge reverse-engineered his RFC to assure he would be denied benefits likewise is without merit. The plaintiff focuses on an awkward comment the administrative law judge made in an exchange with his counsel: "No, I think the Record supports that [the plaintiff] has a management, an anger problem that I've provided a limitation for which would minimize the possibility that would preclude him from working." Statement of Errors at

8 (quoting Record at 615). While this comment could be read as suggesting that the administrative law judge picked a limitation designed to preclude a disability finding, in context, that interpretation is far-fetched. Inasmuch as appears, what the administrative law judge intended to convey was that he had credited the plaintiff's assertion that he had an anger-management problem and supplied a limitation (to occasional interaction with the public and with co-workers) that he believed took the problem into account, minimizing difficulties the anger-management problem would cause at work. *See* Record at 610-11, 615.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of March, 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge